## Case No. 18,259.

### CHARGE TO GRAND JURY—CIVIL RIGHTS ACT.

[3 Hughes, 576.] [1]

Circuit Court, W. D. Virginia. March, 1878.

CIVIL RIGHTS ACT OF MARCH 1, 1875.

A state officer, empowered by law to select jurors to serve in the courts of the state in the trial of civil and criminal cases, who for a series of years selects only white jurors, and fails to select colored jurors, is amenable to indictment in a court of the United States, under section 4 of the act of congress approved March 1, 1875 [18 Stat. 335], entitled "An act to protect all citizens in their civil rights."

The laws of Virginia intrust the whole duty of selecting jurors to serve in the state courts to the judges of the county courts. An act of the general assembly of the state, passed in 1870, provides that "all male citizens, twenty-one years old and not over sixty, who are entitled to vote and hold office under the constitution and laws of the state, shall be liable to serve as jurors." It is alleged as a fact that in many counties of the state colored men have never been put upon the juries. The act of congress of March 1, 1875, for the protection of the civil rights of all citizens, provides that: "Sec. 2. No citizen, possessing all other qualifications which are or may be prescribed by law, shall be disqualified for service as grand or petit juror in any court of the United States, or of any state, on account of race, color, or previous condition of servitude, and any officer or other person charged with the duty in the selection or summoning of jurors, who shall exclude or fail to summon any citizen for the cause aforesaid, shall, on conviction thereof, be deemed guilty of a misdemeanor, and be fined not more than five thousand dollars." At the March term of the circuit court of the United States for the Western district of Virginia, held at Lynchburg, the grand jury made presentment by indictment of several of the judges of the county courts of counties in the district for violation of the second section of the said act of congress just quoted. The indictments were found in pursuance of a charge of the judge of the court, which was as follows:

RIVES, District Judge (charging grand jury). I am required by act of congress to provide for your selection, as nearly as practicable, in conformity with the state law, such is the deference properly paid by congress to the laws and practice of the states. Hence, in the rule of court I have prescribed for the purpose, the lists are returned by the marshal from the various counties appurtenant to this court without discrimination as to race and without reference to politics. The only injunction is to have duly-qualified jurors, of sound judgment, and liable to no suspicion of any disaffection to the government or of any disinclination to execute the laws. From these lists you are then drawn by lot, so as to remove all possibility and repel any imputation of your being impaneled for any sinister purpose or for the accomplishment of private ends. With these precautions the court is assured of your impartiality and your ability to assert and vindicate the laws. You have no sooner taken your oaths, and your seats in the panel, than you are set aside and consecrated to a special and responsible duty, that of inquiring into offenses of every description

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

against the laws of the United States. You cannot, then, be approached by any one on the subject of your inquiries, either by verbal or written communications, unless with my leave, and any attempt at such tampering should be promptly reported to the court for its action. The witnesses you may need are fully protected from all intimidation and hindrance, and the officers who are to execute your process are encouraged and shielded by similar guards. All this displays the anxiety of the laws to insure you the most ample opportunities of prosecuting your inquiries free from all external pressure, and with exclusive reference to your own sense of duty. Outside opinions and outside influences are not to invade the sacred precincts of your deliberations. Fealty to the laws and intrepid fidelity to your oaths is the motto that should be emblazoned over the door through which you retire, and where none can follow save the district attorney, on whom you can at all times call for the laws, and the witnesses who are to give you the facts. In order to preserve the due sanctity of your deliberations, you must be cautious to abstain from all disclosure of your proceedings, and in every respect to observe that secrecy to which you are sworn for obvious ends of justice and dignity.

As to the scope of your inquiries, they are coextensive with the jurisdiction of this court. They cannot go beyond. You are restricted to the statutes of the United States. The warrant for your finding must be found in them. This results from the nature of our governments, state and federal. Congress ordains laws to define and protect the operations of the government of the United States within the states. To this end it establishes courts of its own, and intrusts to them the due assertion and enforcement of its laws. Every question arising under the constitution, the laws, and the treaties of the United States are either primarily or mediately referrible to the federal courts. Hence, if these respective tribunals, state and federal, keep within their prescribed orbits, and discharge their whole duty to the laws of both, there will scarcely be room or occasion for conflict of jurisdiction. But the moment a law of congress is disobeyed in any judicial quarter the danger of this collision becomes imminent, and it becomes the duty of all having power to guard against it to take every possible precaution to prevent it.

Under this persuasion and with this view I deem it my duty to call your special attention to a law of congress designed to secure to all persons "the equal protection of the laws," the denial of which, in a late case in this district, has brought the circuit court of the district in conflict with a state court, apparently to the disquietude of the public. I allude to an act of congress forbidding, under penalties, any discrimination on account of race or color to be made by those charged with the duty of returning jury lists.

Before citing it, however, I would beg leave to recall to you the requirements of your state laws and constitution, not that you have to deal with them on this occasion, but to show you that in the execution of this act of congress you are not asked to do anything contrary to them, but only what is strictly conformable to them. By the laws of the state no discrimination is made on account of race or color in the liability of its citizens to jury service. All male citizens, twenty-one years of age. not over sixty, who are entitled to vote and hold office under the constitution and laws of this state, shall be liable to serve as jurors, etc. Code Va. p. 1058, c. 157, § 1. This could not be otherwise. under the state constitution or the fourteenth amendment of the United States constitution. The former was adopted prior to the ratification of the latter, and it will be seen that the guarantees of the bill of rights are quite as strong as the language of this amendment. It is declared as follows (chapter 20).: "That all citizens of the

state are hereby declared to possess equal civil and political rights and public privileges." Chapter 21: "The declaration of the political rights and privileges of the inhabitants of this state are hereby declared to be a part of the constitution of this commonwealth and shall not be violated on any pretence whatever." This, then, is a fundamental provision of your own state constitution. It was adopted by an overwhelming majority on the 6th of July, 1869. Following this, on the 8th of October, of the same year, was the formal ratification of the fourteenth amendment of the constitution of the nation. It is in these words: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." By the concluding clause of .this amendment congress has power to enforce its provisions by appropriate legislation. In the exercise of this power congress has passed sundry laws to maintain this equality of rights, and to redress their violations. Prominent among these acts is the one I now desire to give you in charge. It is the act of March 1, 1875. It assures to all, without discrimination of race or color, the full and equal enjoyment of the accommodations and privileges of inns, public conveyances, theatres, and other places of amusement, and provides exemplary redress for the denial thereof. But it does not stop here. These are the lesser matters of the law, which, indeed, it scrupulously guards and protects; but it goes farther, and embraces the great muniment of life and liberty in preserving "the trial by an impartial jury," and conforming to the grand "rescript" that "no man shall be deprived of his liberty except by the laws of the land or the judgment of his peers." This act, therefore, secures by its fourth clause to the lately enfranchised race the inestimable privilege of having their rights and privileges. tried by jurors not subject to the traditional influences and spirit of caste. This is a great practical good, which this law seeks to secure, and, as such. deserves your earnest attention in the inquest with which I now charge you. But it must be admitted its scope is broader. It is well for you to consider its language. It is in these words: "That no citizen, possessing all other qualifications which are or may be prescribed by law, shall be disqualified for service as grand or petit juror in any court of the United States, or of any state, on account of race, color, or previous condition of servitude: and any officer or other person charged with any duty in the selection or summoning of jurors who shall exclude or fail to summon any citizen for the cause aforesaid, shall, on conviction thereof, be deemed guilty of a misdemeanor and be fined not more than five thousand dollars."

It so happens that under the state laws the duty of making out and returning jury lists is devolved upon the judges of the county and corporation courts. Code Va. § 3, ch. 157, p. 1059. The act in question has, therefore, to deal with these officers. It is at this point congress intervenes, and constrains them by penalties to observe these provisions, which have naturally grown out of the fourteenth amendment. The offense thus denounced consists in the exclusion by these officers from their jury lists of qualified citizens because of their race, color. or previous condition of servitude. The motive makes and constitutes the misdemeanor. It may be difficult to prove. It is not given to you to know what passes in the mind of another; but, like all unlawful intents, the evidence of it may be found in presumptions of fact. When this intent has been declared, or where a de-

mand of a lawful jury without this discrimination has been refused, the offense would be clearly made out, provided you believe the witness to the declaration or denial. But such indubitable proof may not often be expected. You must look to the surrounding circumstances of the case and the overt acts of the parties to fix the intention of the latter in this exclusion. If it should appear to you that such officer has, by a long and unvarying course, refused to put on his lists the names of colored persons duly qualified, you would be compelled to accept this conduct as evidence of his guilt, indict him for the offense, and give him the opportunity to repel these strong presumptions of fact against him. If, on the contrary, it shall appear that these persons have sometimes listed, or offered to summon when asked, juries without this discrimination of race, you would scarcely be justified to impute this unlawful intent to such occasional omission. It is, in my view, the habitual neglect or the special denial in civil or criminal suits involving the antipathies of race that is aimed at by this act of congress. I trust it will be sufficient for the ends of public justice that attention should be attracted to this law by your findings. I cannot and do not suspect these officers of obstinate or determined disobedience to law. That may be determined by the future. It is the observance of the law, and not punishment for the violation, that is sought. But you and I must obey the laws we are sworn to administer. We cannot be deterred from it by clamors and threats, however industriously raised against us. I feel confident you are duly impressed with the sense of your responsibility, and that you cannot and will not shrink from doing your whole duty.

This inquisition has already taken place in the counties pertaining to the courts at Danville. It remains for you now to prosecute it in counties represented on your panel, leaving the grand juries of the other courts to resume it on their respective parts. If it should be found here, as at Danville, that some obey and others disobey the law, you must needs choose between them. Both cannot be right. If you excuse the disobedient, you reflect on the obedient. It is your duty to enforce a uniform obedience, and exact a universal respect for the laws. If this shall be faithfully and fearlessly done throughout my whole district, it will arrest future resort to the federal courts for a denial in this respect of "the equal protection of the laws," and leave the state courts in the full and free exercise of their appropriate jurisdiction. But if this be not done, and a plain duty is evaded under artfully devised and misplaced scruples as to the law, you will be fomenting further disorders and conflicts. I am at loss to conceive of any motive on the part of honorable and intelligent citizens to undertake in any way to obstruct the great organic measures to which your faith, as a people, is plighted in the most solemn manner, or to thwart the mission of the general government, in all its departments to give the equal protection of the laws to all its citizens without distinction.

Before the Rebellion it must be conceded that the general government was felt by our people only in the blessings it dispensed; in the maintenance of commerce and peace with all nations; the encouragement of our industries, productions, and manufactures; in a sound, convertible currency; and in admirable postal facilities for all the varied demands of intercourse and business. This was necessarily and in a great measure changed by the war of the Rebellion. A heavy debt was incurred in its suppression by arms. That debt fell upon the people of all the states alike, and had to be raised by direct excises. But happily these direct taxes are not, like those following the war of 1812, a burden upon property. They now rest upon articles of luxury, and arise from consumption. Those who do not use tobacco or whisky, nor

deal in them, go free of this impost. Nevertheless the necessities of its collection and the protection of these revenues from illicit traffic brings within the states the collector for the sale of stamps to legitimate the traffic, and his deputies to supervise and suppress the violation of these laws. But they do not come among us without ample protection by law against their venality, extortion, or corruption. You will therefore scrutinize this as well as every other branch of the federal service in your midst, with the view of detecting and exposing any and every malversation in office. But, at the same time, you will see to it that these officers are duly protected in their rightful functions. It is not to be tolerated that they should be met and resisted by arms, and exposed to dastardly assassination by bands of defiant offenders. Not only has this resistance gone thus far elsewhere, but the state courts have arrayed themselves against these officers by indicting them for acts of resistance to these marauders, and refusing them a trial in the federal courts, as ordained by act of congress. This state of things is insufferable, and subversive of government and law. I trust it can never exist in this district. I look to you to denounce all such lawlessness, and to spare no pains to search out these contemners of law and civilization, and bring them to this bar for trial and punishment.

In calling your attention thus emphatically to the foregoing offenses, I would not have you forget that you have to pass under review, however cursory, all the criminal statutes of the United States. You will find them compiled under title 70 of the Revised Statutes, and are classified under heads respectively of crimes against the existence of the government; against public justice; against official misconduct; and finally against the elective franchise and the civil rights of citizens.

From this title you will see that there is no form of official wrong or corruption that has not been foreseen and provided for by congress. It is therefore largely in your power to maintain the purity and integrity of the federal service by denouncing all infractions of these laws. Hence, I especially solicit your scrutiny into the conduct of all the federal agencies within your district, pertaining to the courts, the revenue service, the national banks, and the postoffices. They are all closely allied to the interests of the people, and all reposing trust in you would like to be certified by you that all these departments are satisfactorily and purely administered. It does not fall to your lot, as much as elsewhere, to take cognizance of illicit distilling. It is, for the most part, restricted to the mountain fastnesses of the district, where it is more apt to escape detection and secure impunity. I am sorry to say that this offense has not decreased, as I hoped it would from the number of convictions had and the exemplary punishment inflicted. There seems to be a strange sort of fascination about it, proof against all the pains and penalties of the law. Nevertheless we are bound to pursue it. The law is too plain; the mischief too manifest; the evil example of impunity too flagrant. We must persevere to the end. The law must not be borne down by continuous violations and persistent defiance.

In conclusion, you need scarcely be assured that the court is ready to exert all its authority to maintain the dignity and promote the success of your deliberations. Its process and its officers are at your call, to enable you to extend your researches; but at the same time I must urge you to all convenient dispatch, and the utmost practicable economy of time and money.

NOTE [from original report]. By the resolution of the general assembly of Virginia the attorney-general of the state was instructed to take proper steps to bring the subject of arrest of the county judges indicted under this charge for review by that court. That court had not passed on this subject when this volume was published.